CHARLES O. SWAN, APPELLEE, V. MATTINE M. SWAN APPELLANT.

1. **Witness:** EXAMINATION IN CHIEF. The method of examining witnesses by the use of leading and suggestive questions is not to be encouraged by the courts.

2. **Divorce:** INSUFFICIENT EVIDENCE. The evidence in this case examined, and *Held*, Not sufficient to sustain a decree for divorce.

3. ———: SHOULD ONLY BE GRANTED IN MERITORIOUS CASES. A decree of divorce should not be granted for light and trivial causes, but every party seeking a decree of divorce should be required to bring himself clearly within the provisions of the statute.

4. ———: ABANDONMENT. To sustain an action for divorce on the ground of abandonment, an intent to desert or abandon the plaintiff must actually exist in the mind of the defendant.

APPEAL from Buffalo county. Heard below before GASLIN, J.

*E. C. Calkins*, for appellant.

*A. H. Conner*, for appellee.

REESE, J.

The plaintiff filed his petition for divorce in the district court of Buffalo county, alleging willful abandonment by the defendant. The defendant answered, denying any abandonment and presented a cross petition for divorce and alimony, alleging abandonment by the plaintiff. To this answer no reply was filed. A trial was had to the court, and a decree of divorce was rendered in favor of the plaintiff. The defendant appeals, and insists that the finding of the court that the defendant abandoned the plaintiff is against the weight of evidence, and that the decree should have been in favor of the defendant.

From a careful examination of the evidence adduced on the trial we are of the opinion that there is not sufficient evidence to sustain a decree in favor of either party. As the finding was against the defendant, which was correct, we will briefly notice the evidence adduced on the part of the plaintiff. In this connection we notice, also, the manner in which the testimony was presented to the court. For this purpose, as well as to show the force, or rather want of force of the plaintiff's testimony, we quote the examination in chief entire of the plaintiff when called to the witness stand the first time to testify in his own behalf:

Q.   You are the plaintiff in this case?

A.   Yes, sir.

Q.   State whether you were married on or about the nineteenth of February, 1878?

A.   I was.

Q.   To the defendant here?

A.   Yes, sir.

Q.   State whether or not on or about the second day of November, 1879, she left you?

A.   She did.

Q.   Do you know where she went to?

A.   She went to Dakota territory.

Q.   State if ever since that time she has ever remained away from you against your consent? You have been willing to keep her if she would come and live with you?

A.   Yes, sir.

Q.   State if she has gone out there and stayed out there of her own will?

A.   Yes, sir.

Q.   You are not in business now?

A.   No, sir.

Q.   Have you got any means of your own?

A.   No, sir, I have not.

The witness was then turned over to the defendant's counsel for cross-examination.

We deem it proper here to say that, in our opinion, this manner of examining a witness, especially when testifying in chief in his own behalf, cannot be too severely condemned. It violates almost every rule laid down by law writers for the examination in chief of witnesses, and almost destroys the force of what the witness does testify to, as nearly every answer given by the witness is simply his assent to the propositions contained in the interrogatory.

"The marriage relation should not be severed for slight and trivial causes. A party seeking a divorce should be required to bring his case clearly within the provisions of the statute. If he does so he is entitled to a divorce. If he fails to do this his action should be dismissed." *Brotherton v. Brotherton*, 12 Neb., 74. Applying this rule to the case at bar it is very apparent that no divorce should have been granted.

The evidence shows that soon after the marriage the plaintiff went to the home of the defendant to live, and on a certain occasion became violently sick. His wife caused a physician to be called. After he partially recovered, his father went to the house where he resided and removed him to his own home, but nothing was said about his wife accompanying him. The flimsy pretext is made that he was poisoned by his mother-in-law, but the testimony wholly fails to establish anything of the kind. The defendant continued to reside with her mother in the same town in which the plaintiff resided, and in the course of a few months after he went away she gave birth to a child. The plaintiff paid for the services of the physician who treated her in her confinement, but gave her no further attention, although she was in circumstances bordering on destitution. No nurse was procured for her by him, nor any suitable clothing for herself or child. It is true he testified that he had procured a home for her and she would not leave her mother and live with him, but it is also true that his testimony on this point is very unsatisfactory. It

simply amounts to a statement that he could get a house if she would come. No steps were taken to prepare a home for her, and in fact the proof shows that he had sold his furniture to his father about the time it was taken away from her, when he left her house. The testimony establishes the fact that the defendant was willing to live with him at all times, if he would provide a home and support for her. But that he has never done. One witness testifies that after the defendant had gone to reside with her mother, who had removed to Dakota after the separation, she visited her, and on her return brought a message from the defendant to the plaintiff that "if he would provide a home ever so humble she would come and live with him;" and in his testimony he admits receiving the message as testified to by the witness, but simply says, "She did not come." The testimony throughout fails to show any intent on the part of the defendant to abandon the plaintiff. She did not leave the neighborhood in which he resided until after her parents had gone, and when she found it necessary to go to them the plaintiff went to the depot with her, and she informed him that she was ready to live with him as soon as he procured a place for her.

It is claimed that certain remarks made by the defendant show that she did not intend to live with the plaintiff. One witness testifies that she stated at one time "that when her father got money enough her mother was going to Deadwood, and she was going with her, and no man could stand between her and her mother." Another says she said "that she would not stick to Charlie Swan, and that she would not leave her mother for the best man that ever lived." The witness who testified to the first of the above statements is the father of the plaintiff, but this evidence was stricken out by the court and is not before us. The other statement is denied by the defendant. We attach no importance to this declaration, if true. The circumstances under which the remark was made are in doubt, and it is

not unreasonable to suppose that the witness who testified to the fact was not the person of whom the defendant would make a confidant, and to whom she would expose the secrets of her own mind upon the subject of her domestic troubles.

To sustain this action, an intent to desert or abandon the plaintiff must actually exist in the mind of the defendant, and the marital relation of the parties must cease.   1 Bishop on Marriage and Divorce, § 777.   The distance the parties may remove from each other is not material.   Maxwell's Pleading and Practice, p. 657.   The testimony in the case does not fill these requirements.

The decree of the district court is vacated, the decision reversed, and the cause is dismissed.

JUDGMENT ACCORDINGLY.

THE other judges concur.